# In the United States Court of Federal Claims

No. 24-908
(Filed: March 21, 2025)

```
*************************************
RYAN J. OTIS,                        *
                                     *
               Plaintiff,            *
                                     *
       v.                            *
                                     *
THE UNITED STATES,                   *
                                     *
               Defendant.            *
*************************************
```

*Robert C. Moscati*, The Moscati Law Firm, Reston, VA, counsel for Plaintiff.

*Reta E. Bezak*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant. With whom was *Major Nicole A. Oberjuerge*, U.S. Army Legal Services Agency, Fort Belvoir, VA, of counsel.

## OPINION AND ORDER

**DIETZ, Judge.**

Ryan J. Otis, a former Second Lieutenant in the United States Army, claims he was wrongfully discharged. He seeks reinstatement to active-duty status, correction of his military records, and compensation. The government moves to dismiss his complaint under Rule 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), arguing that Mr. Otis waived his wrongful discharge claim by not raising it to the Army Board for Correction of Military Records ("ABCMR"). In addition, the government moves to dismiss several of Mr. Otis's requests for relief under RCFC 12(b)(1) and RCFC 12(b)(6). For the reasons set forth below, the Court finds that Mr. Otis did not waive his right to bring a wrongful discharge claim in this Court. However, the Court also finds that Mr. Otis either failed to state a claim for, or that this Court lacks jurisdiction over, several of his requests for relief. Accordingly, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the government's motion to dismiss.

## I.      BACKGROUND

Mr. Otis served as a commissioned officer on active duty in the Army from September 8, 2018, to February 14, 2022. Compl. [ECF 1] ¶ 4. On October 17, 2019, a female Army officer reported that Mr. Otis sexually assaulted her on August 30, 2019. *Id*. ¶ 6. Following an investigation by the Army Criminal Investigation Command, the Army charged Mr. Otis with rape and aggravated assault in violation of the Uniform Code of Military Justice ("UCMJ"). *Id*. ¶ 8. Although the case was set for trial, *id*. ¶ 8, Mr. Otis's accuser declined to testify, *id*. ¶ 9. On July 23, 2020, the Army dismissed the court-martial against Mr. Otis and issued him a General

Officer Memorandum of Reprimand ("GOMOR") for "sexually assaulting and strangling" the female officer in violation of the UCMJ. *Id.* ¶¶ 10-11. The Army placed Mr. Otis's GOMOR in his Army Military Human Resource Record ("AMHRR") on September 23, 2020. *Id.* ¶ 12.

On October 22, 2020, the Army initiated an administrative elimination action against Mr. Otis based on the "misconduct" allegation (the alleged rape and sexual assault) and the "derogatory information" from the GOMOR contained in his AMHRR. [ECF 1] ¶ 13. The Army appointed a Board of Inquiry ("BOI") to determine whether the allegations were proven by a preponderance of the evidence and to make a recommendation as to whether Mr. Otis should be retained or eliminated from the Army and, if eliminated, the appropriate characterization of his discharge. *Id.* ¶ 14. The BOI convened on March 8th and 9th of 2021 and determined that the allegation of misconduct—the alleged rape and aggravated assault—were unsubstantiated. *Id.* ¶ 16. However, it also determined that the derogatory information in Mr. Otis's AMHRR was "founded." *Id.* The BOI recommended that Mr. Otis be discharged with a characterization of "General Discharge (Under Honorable Conditions)." *Id.* The BOI further recommended that "the GOMOR be reviewed by higher authorities since the BOI unanimously found that the allegations underlying the GOMOR - the only 'derogatory information' existing which could possibly support a discharge recommendation - had not been substantiated." *Id.*

On May 24, 2021, the Army concluded its legal review of the BOI proceedings and found "that there was a 'legal objection' to the BOI and Officer Elimination proceedings." [ECF 1] ¶ 17. The legal objection consisted of two substantial errors: (1) the Army's failure to introduce Mr. Otis's entire AMHRR, "which the legal review concluded had a material, adverse effect on Mr. Otis's substantial rights under Army regulations and the Due Process Clause [of the United States Constitution]," and (2) "the BOI's finding of there being derogatory information in [Mr.] Otis's AMHRR sufficient to warrant separation when the only such information was the mere existence of a GOMOR – a GOMOR which exclusively relied upon the same allegations that the Board concluded were unsubstantiated." *Id.* (first alteration in original). The legal review concluded "that it was legal error for the BOI to find the existence of only an unsubstantiated GOMOR, without other deficiencies in [Mr.] Otis's record, to be sufficient 'derogatory information' to warrant the officer's elimination under the applicable legal standards." *Id.*

Despite these conclusions, on June 17, 2021, "the BOI Convening Authority approved the BOI's findings and recommendation." [ECF 1] ¶ 18. Thereafter, Mr. Otis made numerous unsuccessful attempts to appeal the Army's adverse actions, including filing the following:

> (a) an Article 138 Complaint; (b) a [Department of Defense ("DoD") Inspector General] Complaint; (c) a GOMOR removal petition; (d) a Congressional inquiry; (e) a "Titling" petition to the United States Army Criminal Investigation Command;[1] (f) an Application for Correction of Military Record to the Army Review Boards Agency;

---

[1] DoD Instruction 5505.07 "[e]stablishes policy, assigns responsibilities, and prescribes uniform standard procedures for titling persons . . . in DoD law enforcement activity (LEA) reports and indexing them in the Defense Central Index of Investigations (DCII)." DoDI 5505.07. "Titling" refers to the placement of "the name and identifying information of a person, corporation, or other legal entity in the title block of a DoD LEA report." *Id.* at § G.2.

and (g) a petition to the Army Board for Correction of Military Records [("ABCMR")].

*Id.* ¶ 19 (footnote added). On January 18, 2022, the Army Review Boards Agency determined that Mr. Otis "would be eliminated from the Army with a General (Under Honorable Conditions) discharge, based on 'derogatory information.'" [ECF 1] ¶ 20. Approximately one month later, on February 14, 2022, the Army issued him a DD-214, Certificate of Release or Discharge from Active Duty, "with a characterization of service of 'Under Honorable Conditions (General)' and a Separation Code of 'JNC,'" which prevents re-entry into the military. *Id.* ¶ 21.

On January 23, 2024, following a remand from the United States District Court for the Eastern District of Virginia ("EDVA"), the ABCMR found that Mr. Otis's GOMOR "failed to meet legal standards of review resulting in the grievous injustice and harm complained of." [ECF 1] ¶ 22 (emphasis omitted). The ABCMR therefore ordered that the GOMOR be removed from his AMHRR, *id.*, and, on February 27, 2024, "Army Human Resources Command notified [Mr.] Otis that his GOMOR had been removed from his AMHRR." *Id.* ¶ 23.

On April 7, 2023, Mr. Otis filed a wrongful discharge complaint in this Court. *See Otis v. United States*, No. 23-483 (Fed. Cl.) [ECF 1]. On January 8, 2024, the Court dismissed that complaint for lack of subject-matter jurisdiction under 28 U.S.C. § 1500 because Mr. Otis had a pending case in the EDVA when he filed his complaint in this Court. *Otis v. United States*, 168 Fed. Cl. 739, 740-41 (2024) ("Section 1500 . . . restricts the jurisdiction of this Court when related actions against the United States are pending in other courts.").[2] On June 13, 2024, Mr. Otis refiled his wrongful discharge complaint in this Court. [ECF 1]. In his complaint, Mr. Otis states that "[t]he ABCMR's findings and recommendations in its January 23, 2024[,] Record of Proceedings have conclusively established the unlawfulness of [his] elimination and discharge" and that "[w]ith the removal of his GOMOR – the only basis for the Board of Inquiry's recommendation for his elimination from the Army – [his] resultant injuries demand compensation." [ECF 1] ¶ 28. He seeks an order from the Court directing, *inter alia*, the government "to restore [him] to an active-duty status in the Army in the grade, date of rank, and with the years of service he otherwise would have attained and been entitled to absent the Accuser's allegations and all actions undertaken by the Army related thereto" and "to fully compensate [him] for all pay and allowances he otherwise would have earned from the date of his discharge to the date of his reinstatement on active-duty." *Id.* ¶ 29.

On August 12, 2024, the government moved to dismiss the complaint for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1) and for failure to state a claim pursuant to RCFC 12(b)(6). Def.'s Mot. to Dismiss [ECF 6]. The government's motion to dismiss is fully briefed, and the Court determined that oral argument is not necessary.

---

[2] Mr. Otis filed his complaint in the EDVA on February 13, 2023. *Otis*, 168 Fed. Cl. at 741. The EDVA dismissed his complaint on June 8, 2023, following the government's consent motion to remand Mr. Otis's case to the ABCMR for corrective action. *Id.* at 742.

## II. STANDARDS OF REVIEW

When the government moves to dismiss a complaint for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *Tolliver Grp., Inc. v. United States*, 20 F.4th 771, 775 (Fed. Cir. 2021). When considering such a motion, "this Court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor." *Cal. Dep't of Water Res. v. United States*, 128 Fed. Cl. 603, 609 (2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). However, the "court accepts only uncontroverted factual allegations as true for purposes of the motion." *U.S. Enrichment Corp. v. United States*, 121 Fed. Cl. 532, 534 (2015) (quoting *Banks v. United States*, 741 F.3d 1268, 1277 (Fed. Cir. 2014)). "[D]isputed facts outside the pleadings are subject to the fact finding of the court." *Engage Learning, Inc. v. Salazar*, 660 F.3d 1346, 1355 (Fed. Cir. 2011) (citing *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-1584 (Fed. Cir. 1993)). "Whether the court possesses jurisdiction to decide the merits of a case is a threshold matter." *Sandstone Assocs., Inc. v. United States*, 146 Fed. Cl. 109, 112 (2019) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998)). Thus, if the Court determines that it lacks subject-matter jurisdiction, it must dismiss the case. RCFC 12(h)(3); *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007)). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.*; *see also Twombly*, 550 U.S. at 555 (requiring a pleading to offer "more than labels and conclusions"). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Rather, a plaintiff must plead sufficient factual matter to "raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555. Sufficient factual matter requires "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim is plausible on its face when 'the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *TrinCo Inv. Co. v. United States*, 722 F.3d 1375, 1380 (Fed. Cir. 2013) (quoting *Iqbal,* 556 U.S. at 678).

## III. DISCUSSION

The government makes two arguments in its motion to dismiss. First, the government argues that Mr. Otis's complaint should be dismissed for failure to state a claim under RCFC 12(b)(6) because he waived his claim that his separation was unlawful "by failing to present it to the [ABCMR] when he had the opportunity." [ECF 6] at 6.[3] Second, the government argues that, even if Mr. Otis did not waive his unlawful separation claim, he is not entitled to the majority of the relief that he seeks because it "is unavailable in a Military Pay Act claim and otherwise falls

---

[3] All page numbers in the parties' briefs refer to the page numbers generated by the CM/ECF system.

outside the jurisdiction of this Court to grant." *Id.* For the reasons below, the Court finds that Mr. Otis did not waive his wrongful discharge claim, but that Mr. Otis has failed to state a claim for, or this Court lacks jurisdiction over, several of his requests for relief.

### A. Mr. Otis's Wrongful Discharge Claim

The government argues that Mr. Otis waived his wrongful discharge claim by failing to raise it with the ABCMR. [ECF 6] at 12. The government states that Mr. Otis "never argued to the board that the alleged errors (namely, the existence of the GOMOR and the investigation report identifying him as the subject) rendered his separation unlawful." *Id.* According to the government, "[b]ecause he chose to seek review by the board but did not raise the arguments he now presents, he has waived his claims before this Court." *Id.* Mr. Otis counters that "until the ABCMR found the [GOMOR] that served as the sole basis of [Mr.] Otis's removal invalid, and therefore ordered it removed from his record, [he] had no basis to claim that his separation from the service was legally flawed." Pl.'s Resp. [ECF 9] at 4. "With that GOMOR no longer in existence," Mr. Otis contends that "only now does [he] have a Tucker and Military Pay Act claim" against the government and that "[he] need not go back to the ABCMR first to in order to bring a claim here." *Id.* (emphasis omitted).

"Congress has given the military secretaries the power to correct military records using civilian Corrections Boards." *Richey v. United States*, 322 F.3d 1317, 1323 (Fed. Cir. 2003) (citing 10 U.S.C. § 1552(a)(1) (2000)). Under the corrections board statute, "[t]he Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). An aggrieved service member, however, need not exhaust his administrative remedies by appealing to a military review board. *Martinez v. United States*, 333 F.3d 1295, 1304 (Fed. Cir. 2003) (noting that "correction boards have been regarded as a permissive administrative remedy and that an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit challenging the discharge"); *accord Klingenschmitt v. United States*, 119 Fed. Cl. 163, 182 (2014) ("It is well established that military correction boards provide a permissive administrative remedy for wrongful discharge and that an application to a correction board is therefore not a mandatory prerequisite to filing a Tucker Act suit challenging the discharge.") (internal quotation marks omitted), *aff'd*, 623 F. App'x 1013 (Fed. Cir. 2015). "An officer seeking correction of military records may either apply as an initial matter to a Corrections Board, or file suit under the Tucker Act in the Court of Federal Claims." *Richey*, 322 F.3d at 1323 (citing *Heisig v. United States,* 719 F.2d 1153, 1155 (Fed. Cir. 1983)). If, however, the service member first seeks relief from a corrections board, he must raise all issues or he runs the risk that he will be precluded from raising them before this Court on the grounds of waiver. *Spehr v. United States*, 51 Fed. Cl. 69, 85 (2001), *aff'd*, 49 F. App'x 303 (Fed. Cir. 2002) ("A claimant's failure to raise an issue during [A]BCMR proceedings constitutes a waiver of the issue in this court.") (citing *Walden v. United States*, 22 Cl. Ct. 532, 538 (1991) and *Doyle v. United States*, 599 F.2d 984, 1000 (Ct. Cl.), *amended sub nom. In re Doyle*, 609 F.2d 990 (Ct. Cl. 1979), *superseded on other grounds by statute*, 10 U.S.C. § 628 (1994)). "Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions

unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." *United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 37 (1952).

Mr. Otis did not waive his right to bring a wrongful discharge claim in this Court by failing to raise it in the prior ABCMR proceedings. The waiver rule aptly applies where a service member appeals an unfavorable correction board decision to the court and raises arguments that were not previously raised for consideration by the board. *See Klingenschmitt*, 119 Fed. Cl. at 183 (explaining that "if a party elects to bring a claim before an administrative agency, it must give that agency the opportunity to resolve all issues relevant to the adjudication of that claim, and it cannot save some arguments for an initial airing before the court on review of the agency's decision"). Here, Mr. Otis is not attempting to "topple over" the ABCMR's decision by raising new arguments. *L. A. Tucker Truck Lines, Inc.*, 344 U.S. at 37. Mr. Otis's petition to the ABCMR did not relate to the lawfulness of his discharge.[4] *See Klingenschmitt*, 119 Fed. Cl. at 183 (stating that "the full resolution of the claims presented to the Board . . . did not require the Board to consider in any way the circumstances under which [the plaintiff] was separated from the service"). Moreover, the ABCMR proceedings resulted in a favorable outcome for Mr. Otis—removal of the GOMOR from his AMHRR—so he has no reason to object to it. Because Mr. Otis's claim in this Court is not an appeal of a prior ABCMR decision, there is no waiver issue. In his complaint, Mr. Otis alleges that his discharge was unlawful. [ECF 1] ¶ 28. Thus, with respect to this claim, Mr. Otis is not required to exhaust his administrative remedies by first appealing to the ABCMR. *See Martinez*, 333 F.3d at 1304. Instead, he may choose to first file a petition with the ABCMR or file a complaint in this Court. *Richey*, 322 F.3d at 1323. Accordingly, because Mr. Otis brings a new claim in this Court—a claim that was never before the ABCMR—the waiver rule is inapposite.

### B. Mr. Otis's Requests for Relief

According to the government, "[e]ven if Mr. Otis had not waived his claim before this Court and even if he were to ultimately succeed in his claim of unlawful discharge, he has not stated a claim for the relief he seeks." [ECF 6] at 14. The government contends that, "[w]ith the exception of Mr. Otis's request to be reinstated and for resulting back pay, Mr. Otis's claims for relief would neither be mandated by the Military Pay Act nor incident and collateral to any judgment thereunder." *Id.* Mr. Otis "concedes there are perhaps appropriate revisions to its prayer for relief in light of the ABCMR's most recent ruling" but suggests that such revisions are better resolved after the Court adjudicates the government's motion to dismiss. [ECF 9] at 5. Further, Mr. Otis requests "that if this motion is denied, the parties be permitted to further supplement their pleadings, and present oral argument, as to the suitability of, and authority for, the several forms of relief sought by the Plaintiff." *Id.*

---

[4] Mr. Otis's application to the ABCMR requested removal of the GOMOR from his AMHRR and deletion of his name from the titling block of the Army law enforcement report documenting the investigation into his conduct. *See* App. to Def.'s Mot. to Dismiss [ECF 6-1] at 2-6; 62-75. On remand from the EDVA, the ABCMR reconsidered its earlier denial of his application and granted the requested relief. *Id.* at 197-215.

6

"The Tucker Act authorizes certain actions for monetary relief against the United States to be brought in the Court of Federal Claims." *Martinez*, 333 F.3d at 1302. It "does not itself provide the substantive cause of action" and instead requires that the plaintiff identify a separate "source of substantive law on which to base a Tucker Act suit against the United States." *Id.* at 1303. The Military Pay Act ("MPA") provides a money-mandating statute on which a plaintiff may bring a wrongful discharge claim under the Tucker Act. *See Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006) (stating that "the [MPA] has previously been held to be money-mandating"). Under the MPA, the plaintiff "must allege that, because of the unlawful discharge, the plaintiff is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge." *Martinez*, 333 F.3d at 1303. The United States Court of Federal Claims "does not have general equity jurisdiction," but, in money claims against the United States under the MPA, "the court may issue such orders as are necessary '[t]o provide an entire remedy and to complete the relief afforded by the judgment,' including 'as an incident of and collateral to any such judgment, issue orders directing restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records.'" *Id.* (alteration in original) (citing 28 U.S.C. § 1491(a)(2)).

Mr. Otis seeks various forms of relief for his alleged wrongful discharge. Specifically, he requests that the Court issue an order:

> (a) directing Defendant to restore Plaintiff to an active-duty status in the Army in the grade, date of rank, and with the years of service he otherwise would have attained and been entitled to absent the Accuser's allegations and all actions undertaken by the Army related thereto;
>
> (b) directing Defendant to fully compensate Plaintiff for all pay and allowances he otherwise would have earned from the date of his discharge to the date of his reinstatement on active-duty;
>
> (c) directing Defendant to correct all of Plaintiff's military records to remove any and all references to the Accuser's allegations and all actions undertaken by the Army related thereto, or remove and destroy such records in their entirety;
>
> (d) alternately, if the Plaintiff elects not to seek reinstatement and continuation on active-duty, in addition to the relief requested at paragraph 29(b), directing Defendant to compensate Plaintiff for the pay and allowances he would have earned in a full, twenty (20) year career, complete with the usual promotions likely over such period, and all retired pay which then would be paid through the remainder of Plaintiff's lifetime, as calculated by the Court;
>
> (e) directing Defendant to compensate the Plaintiff for all lost income from the date of discharge to the date he is or was able to

>secure similar, professional employment commensurate with his education, background and experience;
>
>(f) directing Defendant to compensate the Plaintiff for all legal costs and expenses he has incurred defending himself from Accuser's allegations, the Army's actions against him, and his attempts to seek redress from all such actions;
>
>(g) directing Defendant to compensate the Plaintiff for all medical costs and expenses he has incurred related to the Accuser's allegations, the Army's actions against him, and his attempts to seek redress from all such actions;
>
>(h) directing Defendant to compensate the Plaintiff for all harms related to Defendant's actions, to include, but not be limited to: (i) personal and professional embarrassment and harm to his reputation; (ii) Post Traumatic Stress Syndrome; and (iii) detrimental interference in his personal relationships with family, friends, acquaintances, and spouse; and
>
>(i) directing Defendant to initiate an investigation into the false accusations and actions of the Accuser, and to take all appropriate actions under Army regulations and/or federal law commensurate with their findings.

[ECF 1] ¶ 29(a)-(i).

The Court shares the concerns raised by the government regarding Mr. Otis's requests for relief. As the government concedes, *see* [ECF 6] at 14, if Mr. Otis succeeds in his wrongful discharge claim, the Court has authority under the Tucker Act to void Mr. Otis's discharge, to reinstate him to active duty, and to afford him back pay and allowances incident to his return to active duty. *See Tippett v. United States*, 28 F. App'x 942, 945 (Fed. Cir. 2011) (holding that a service member who has been improperly and involuntarily discharged is entitled to cancellation of his discharge, reinstatement at the same grade as of the date of discharge, correction of his records to reflect active duty service up to the date of reinstatement, and back pay from the date of his discharge to reinstatement). Therefore, Mr. Otis's claims for relief in (a), (b), and (c) generally fall within this Court's authority to grant. [ECF 1] ¶ 29(a)-(c).

However, the Court cannot provide Mr. Otis with a promotion absent a statute or regulation entitling Mr. Otis to such promotion as a matter of law. *Melendez Camilo v. United States*, 89 Fed. Cl. 671, 680 (2009) (citing *Voge v. United States*, 844 F.2d 776, 782 (Fed. Cir. 1988)), *aff'd*, 642 F.3d 1040 (Fed. Cir. 2011); *see Antonellis v. United States*, 723 F.3d 1328, 1332 (Fed. Cir. 2013) (stating that "civilian courts are reluctant to second-guess decisions of the military authorities as to promotion"). Yet, Mr. Otis's complaint does not identify any statute, regulation, or rule that the Army violated by failing to promote him or that otherwise provides

him with "a clear-cut legal entitlement" to a promotion. *Conti v. United States*, 168 Fed. Cl. 547, 557 (2023) (stating that for plaintiff's claims "to be justiciable, she must identify an instruction that the Air Force violated by failing to promote her (and that provides a justiciable standard) or she must demonstrate that she has satisfied all the legal requirements for promotion but that the military has refused to recognize her status, *i.e.*, a clear-cut entitlement to promotion"), *aff'd*, No. 2024-1403, 2024 WL 4100410 (Fed. Cir. Sept. 6, 2024). Neither can the Court mandate that the Army compensate Mr. Otis as though he had completed a 20-year career in the Army when he had served less than four years as of the date of his discharge. If Mr. Otis is found to have been improperly discharged, he may be entitled to constructive active-duty credit and related back pay and allowances at the rank he was appointed to up until he is properly separated. *Bates v. United States*, 34 Fed. Cl. 51, 53 (1995) (stating that "[t]he court may restore a service member 'to office or position,' place the individual in the 'appropriate duty or retirement status,' and correct 'applicable [military] records.'" (second alteration in original, internal citations omitted)); *Anderson v. United States*, 111 Fed. Cl. 572, 579 (2013) (stating that "[c]laims for back pay . . . [and] allowances incident to active-duty military service are also typically within the jurisdiction of the court when brought in a wrongful discharge suit"), *aff'd sub nom. Allphin v. United States*, 758 F.3d 1336 (Fed. Cir. 2014). However, he will not be entitled to compensation beyond "the salary of the rank to which he is appointed and in which he serves," either actively or constructively. *Smith v. Sec'y of Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004); *Christian v. United States*, 337 F.3d 1338, 1347 (Fed. Cir. 2003), *decision modified and remanded*, 60 Fed. Cl. 550 (2004) (explaining that under the constructive service doctrine, "military personnel who have been illegally or improperly separated from service are deemed to have continued in active service until their legal separation"). Therefore, Mr. Otis has failed to state a claim for the relief requested in (d). [ECF 1] ¶ 29(d).

Additionally, the Court does not have jurisdiction to award damages stemming from alleged tort claims. *Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998) (stating that "[i]t is well settled that the Court of Federal Claims lacks jurisdiction over any and every kind of tort claim"). Thus, the Court lacks jurisdiction over Mr. Otis's requests for lost income in (e);[5] legal costs and expenses that he incurred defending himself from his accuser's allegations, the Army's actions against him, his attempts to seek redress from all such actions in (f);[6] medical costs and expenses that he incurred related to his accuser's allegations in (g); and compensation for harms allegedly caused by the Army's actions, such as embarrassment and reputational harm, post-

---

[5] The Court views Mr. Otis's claim for "all lost income from the date of discharge to the date he is or was able to secure similar, professional employment commensurate with his education, background and experience" in ¶ 29(e) of his complaint as separate from his claim for backpay and allowances under ¶ 29(b). A claim for loss of income sounds in tort and falls outside of this Court's jurisdiction. *Cramer v. United States*, No. 23-37, 2023 WL 3072541, at *3 (Fed. Cl. 2023) (concluding that the plaintiff's requests for compensatory damages, such as loss of income damages, sound in tort).

[6] The Court views Mr. Otis's claim for "legal costs and expenses he has incurred defending himself from [his] [a]ccuser's allegations, the Army's actions against him, and his attempts to seek redress from all such actions" in ¶ 29(f) of his complaint as separate from a request for legal fees and expenses under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The government concedes that the Court may consider a request for legal costs and expenses under EAJA. [ECF 6] at 16 n.5. However, the Court does not have jurisdiction to award legal fees as compensatory damages stemming from a tort claim. *Rogers v. United States*, 66 F. App'x 195, 197-98 (Fed. Cir. 2003) (affirming dismissal of claim seeking legal fees as compensatory damages).

traumatic stress, and interference in his personal relationships, in (h). [ECF 1] ¶ 29(e)-(h); *see Rana v. United States*, 130 Fed. Cl. 629, 635 (2016) (holding that the "[p]laintiff's claims for compensation based on his loss of livelihood, defamation of character, and pain and suffering sound in tort, and therefore lie outside of the jurisdiction of this Court"), *aff'd*, 664 F. App'x 943 (Fed. Cir. 2016). While Mr. Otis includes these claims for relief as part of his complaint seeking compensation for his alleged wrongful discharge, they sound in tort and therefore fall outside of this Court's jurisdiction. *See Cottrell*, 42 Fed. Cl. at 149 (explaining that "[e]ven where the claim is framed under non-tort law, the court lacks jurisdiction if the essence of the claim lies in tort").

Lastly, with respect to Mr. Otis's request in (i) that the Court order the Army "to initiate an investigation into the false accusations and actions of [his] Accuser," [ECF 1] at ¶ 29(i), this Court does not have the authority to order such an investigation. "[L]imited equitable relief sometimes is available in Tucker Act suits. However, that equitable relief must be 'an incident of and collateral to' a money judgment. *James v. Caldera*, 159 F.3d 573, 580 (Fed. Cir. 1998) (citing 28 U.S.C. § 1491(a)(2)). In other words, "the Court of Federal Claims has no power 'to grant affirmative non-monetary relief unless it is tied and subordinate to a money judgment.'" *Id.* (quoting *Austin v. United States*, 206 Ct. Cl. 719, 723 (1975)). Mr. Otis has not sufficiently alleged how such an investigation is tied and subordinate to a monetary award if he succeeds with his wrongful discharge claim.

## IV.     CONCLUSION

For the reasons set forth above, the Court **GRANTS-IN-PART** and **DENIES-IN-PART** the government's motion to dismiss [ECF 6]. The Court **GRANTS** the government's motion by dismissing Mr. Otis's claims for relief in [ECF 1], ¶ 29(d)-(i). Such dismissal shall be without prejudice. The Court **DENIES** the government's motion to dismiss Mr. Otis's wrongful discharge claim.

In its motion, the government states that "if the Court were to determine that Mr. Otis has not waived his claim for unlawful discharge . . . we respectfully request that the Court remand the matter to the board to consider in the first instance whether Mr. Otis's discharge was unlawful in light of the board's previous decision." [ECF 6] at 18. Mr. Otis contends that the government "offers no legal mandate or authority for yet another remand; rather, they merely fashion this as a request" that would result in delay." [ECF 9] at 5. In light of this Opinion and Order, the Court **ORDERS** the parties to meet and confer regarding a potential remand of Mr. Otis's wrongful discharge claim to the ABCMR and to file a joint status report **on or before April 4, 2025**, advising the Court of the outcome. In the joint status report, the parties shall address the specific issues to be remanded and the length of the remand period. To the extent that the parties are unable to reach an agreement on a proposed remand, the Court will schedule a hearing to determine further proceedings in this case.

IT IS SO ORDERED.

s/ Thompson M. Dietz  
Thompson M. Dietz, Judge